**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------X

**Dennis Watkins,**

                                        **Plaintiff,**

                        **-against-**

**CAPTAIN MERCHESE et al.,**

                                        **Defendants.**

-----------------------------------------------------------------X

```
┌─────────────────────────────────┐
│ USDC SDNY                        │
│ DOCUMENT                         │
│ ELECTRONICALLY FILED             │
│ DOC #: _____           │
│ DATE FILED: __ 6/17/2015         │
└─────────────────────────────────┘
```

**13-CV-03267 (GBD)(SN)**

**REPORT AND**
**RECOMMENDATION**

**SARAH NETBURN, United States Magistrate Judge.**

 **TO THE HONORABLE GEORGE B. DANIELS:**

        In this action, *pro se* plaintiff Dennis Watkins[1] brings claims against members of the

New York City Department of Correction ("DOC") Captains Merchese and Kurtaj,

Correction Officers Thompson and Davis, and Doctor Eugenio Mateo under 42 U.S.C.

§ 1983 and state law for excessive force and denial of medical care. The defendants moved

to dismiss Watkins's complaint under Federal Rule of Civil Procedure 41(b) for failure to

prosecute. Watkins argued in opposition that any delay in prosecuting his case was caused

by the fact that he was incarcerated, and that his refusal to answer questions at his deposition

was due to illness or trauma. For the following reasons, I recommend that the defendants'

motion be GRANTED, and that Watkins's case be dismissed with prejudice.

---

[1] In his interaction with the Court and with defense counsel, Watkins requests that his name not be spelled entirely in capital letters, and that he be addressed in speech as "John Peter Public." All references in the record to Public are, in fact, references to Watkins.

**BACKGROUND**

**I.      FACTUAL HISTORY**

On or about July 16, 2012, Watkins claims that he suffered a seizure while he was incarcerated at Manhattan Detention Center. As a result of the seizure, Watkins fell, and he claims that Merchese, Kurtaj, Davis and Thompson beat him for falling, moved him after the seizure, and left him in a bus that was over 100 degrees Fahrenheit. Watkins alleges that Mateo endangered his life by allowing this to happen despite knowing Watkins's history of heat stroke, seizures and asthma. Watkins claims that he was taken to Bellevue Hospital, where physicians found hairline fractures in his back, and that he was given crutches and a neck brace. For the reasons set forth below, there has been no further factual development of the record.

**II.     PROCEDURAL HISTORY**

On May 14, 2013, Watkins filed his complaint (ECF No. 1). Since then, he has written numerous letters to the Court. Only those that are relevant to this motion are summarized.

On July 3, 2013, the Hon. George B. Daniels referred this case to my docket for general pretrial supervision (ECF No. 6).

On July 24, 2013, Watkins sent a letter to the Court entitled an "Application for Certificate of Probable Cause," (ECF No. 12), which argued for relief more properly available in a writ of *habeas corpus*. On August 5, 2013, the Court ordered that his *habeas* claim, which was not included in the complaint in this case, be opened as a new civil case (ECF No. 13), and his letter was docketed at <u>Watkins v. The People of the State of New</u>

York, 13 Civ. 5560 (LAP).[2] His letter also objected to having his case before me and expressed concern that he would be unable to litigate while incarcerated. The Court indicated that his case was before me for pretrial matters but still before Judge Daniels for dispositive matters, and reminded him that, while he was able to pursue his case while in custody of the DOC, "it is his burden to litigate this case and prove his claims. The Court cannot assist him in this effort." Order of August 15, 2013 at 1 (ECF No. 17). On August 27, 2013, Watkins filed an objection to my handling of his case's pretrial matters (ECF No. 19). On August 28, 2015, Judge Daniels overruled his objections (ECF No. 20).

On October 7, 2013, the parties appeared telephonically for an initial pretrial conference, and the Court issued a Civil Case Management Plan and Scheduling Order setting the close of fact discovery for February 10, 2014 (ECF No. 24). On October 28, 2014, Watkins requested *pro bono* counsel and a stay of the case until he was released from prison (ECF No. 29). On November 4, 2013, the Court denied his request for counsel without prejudice, and denied his request for a stay (ECF No. 30). Watkins again requested a stay in a November 9, 2013 letter on unrelated matters (ECF No. 31), and the Court again denied his request (ECF No. 33).

On December 9, 2013, Daniel Passeser, Esq., counsel for the defense, wrote to the Court to advise it that Watkins had not responded to interrogatories and document requests and had not signed Court-ordered medical releases, despite repeated requests (ECF No. 36). On December 12, 2013, the Court ordered Watkins to comply with his discovery obligations by December 31, 2013, or risk dismissal under Rule 41(b) for failure to prosecute (ECF No.

---

[2] The People of the State of New York was closed on January 16, 2014 following the order of the Hon. Loretta A. Preska (ECF No. 10) dismissing that case without prejudice under Rule 41(b) for failure to follow a Court order, namely her September 12, 2013 Order (ECF No. 4) to either pay a $5 filing fee or file an application to proceed *in forma pauperis*.

37).[3] This constituted his first written warning (in this case) that he risked dismissal for refusing to comply with the Court's discovery orders. Watkins wrote two letters in response, first on December 7, 2013 (ECF No. 41) and again on December 9, 2013 (ECF No. 40) claiming that he was awaiting documents from the defense and was unable to access a notary, and renewing his request for *pro bono* counsel. Following the defendants' January 6, 2014 request (ECF No. 42), the Court ordered a telephone conference that was ultimately held on February 4, 2014.

During the February 4, 2014 phone conference, Watkins: (1) claimed that the defense was lying about a lack of responsive documents to some of his requests; (2) renewed his request for *pro bono* counsel, and requested, in the alternative, a private investigator; (3) objected to the scope of the defendants' request for medical records and refused to sign medical releases without circumscribing the time period to which they applied; and (4) objected again to my handling of this case and requested that Judge Daniels handle pretrial matters. In an order that day memorializing the conference, the Court (1) denied Watkins's request for the documents, which the defense explained did not exist; (2) denied his request for *pro bono* counsel or a private investigator; (3) overruled his objection in part, on the grounds that some of his other medical records were relevant because the defense claimed that he was fabricating his injuries; and (4) informed him that the case would remain with this Court for general pretrial supervision (ECF No. 48). The Court ordered the defense to provide Watkins with new releases that were limited to the period from July 5, 2012 to the time of signing, directed Watkins to execute them as soon as he received them,

---

[3] "Watkins must comply with his discovery obligations . . . . If Watkins fails to provide such information and responses, this action may be dismissed with prejudice for failure to prosecute pursuant to Rule 41(b) of the Federal Rules of Civil Procedure." ECF No. 37 at 2.

and offered to make a notary available if he could not have the releases notarized within three weeks. The Court also extended fact discovery until April 10, 2014.

On February 25, 2014, the defense wrote to the Court to explain that it had sent new releases to Watkins on February 4, 2014 and still had not received a response (ECF No. 49). On February 26, 2014, the Court ordered Watkins to complete the forms by March 7, 2014, and said that if he encountered trouble accessing a notary in prison, he should show the Court's order to a supervising officer (ECF No. 50). The Court advised the defense that, if it did not receive executed releases or otherwise hear from Watkins by March 14, 2014, it may file a motion to dismiss for failure to prosecute.[4] This constituted Watkins's second written warning that his behavior could result in dismissal of his case.

On February 27, 2014, Watkins wrote to the Court (ECF No. 51) to say that he believed Passeser did not intend to comply with the agreements made at the February 4, 2014 telephone conference and that were memorialized in that day's order. On March 14, 2014, Passeser wrote to the Court stating that he had intentionally left the dates blank on the release forms sent to Watkins and that he was re-sending the forms to Watkins (ECF No. 52). He asked the Court to issue an Order to Show Cause why this case should not be dismissed if Watkins did not respond by April 4, 2014. On March 17, 2014, the Court approved the defense's request and ordered Watkins to respond by April 4, 2014. The Court informed him that if he did not, the defendants could request an Order to Show Cause (ECF

---

[4] "If the defendants have not received the executed medical releases by March 14, 2014, or otherwise heard from Mr. Watkins, defendants may file a motion to dismiss this action for failure to prosecute." ECF No. 50 at 2.

No. 53).[5] This was Watkins's third written warning that he faced the potential sanction of dismissal.

On March 19, 2015, the Court received a letter from the plaintiff dated March 12, 2014 requesting inappropriate assistance from the Court, which the Court denied on March 20, 2014 (ECF No. 54). The Court also reminded Watkins of the April 4, 2014 deadline. On April 7, 2014, the defense wrote to the Court to indicate that Watkins still had not submitted his executed medical releases and to request the issuance of an Order to Show Cause (ECF No. 56). On April 14, 2014, rather than issuing an Order to Show Cause, the Court scheduled a telephone conference (ECF No. 57), which it later rescheduled for April 25, 2014 (ECF No. 58). On April 10, 2014, Watkins filed a letter that the Court received on April 16, 2014, arguing that his case should not be dismissed (ECF No. 59).

On April 25, 2014, following the telephone conference, the Court memorialized the rulings it made at that conference (ECF No. 60). The Court ordered the defense to send the releases to Watkins at his new location and ordered Watkins to undertake every effort to have the forms immediately notarized and then returned to the defense. The defense was also ordered to ensure that Watkins faced no problems in doing so at his facility of incarceration. The Court again reminded Watkins that the medical releases were critical to his claims.[6] The Court extended discovery until July 4, 2014.

On May 7, 2014, the Court noted that Southport Correctional Facility, the prison where Watkins was located, had informed it that Watkins was unable to have his releases

---

[5] "If Watkins has not provided defendants with notarized medical releases by April 4, 2014, defendants may request that the Court issue an Order to Show Cause why the action should not be dismissed for failure to prosecute." ECF No. 53 at 2.
[6] "The plaintiff is reminded that these medical records are critical to his claims and that without them, he will likely be unable to prove his claims . . . ." ECF No. 60 at 1.

notarized because he had been signing them with another name, likely his alias of John Peter Public, and because he was invoking the Uniform Commercial Code ("UCC") when executing those forms (ECF No. 61). The Court ordered Watkins to sign the forms with his legal name, and reminded him that the releases were essential to his claim, and that if he failed to produce notarized versions of them, his claims would be dismissed with prejudice.[7] This was Watkins's fourth written warning from the Court to comply with a discovery order or face dismissal.

On June 6, 2014, the defense filed a letter, along with a declaration from Passeser, to indicate that the defendants still had not received executed medical releases or any other correspondence from Watkins, and to renew their request for an Order to Show Cause (ECF No. 67).

On June 27, 2014, in an order, the Court addressed Watkins's letters regarding a discovery issue (ECF No. 72). The Court again reminded Watkins that if he failed to properly produce his executed medical releases by the close of discovery, the Court would consider the defendants' renewed request that the case be dismissed for failure to prosecute. This was Watkins's fifth written warning that he risked dismissal for failure to obey the Court's discovery orders.[8]

On July 8, 2014, the defendants filed a letter indicating that Watkins had not met the deadline to submit his medical releases and had not requested an extension (ECF No. 73). The letter also argued that Watkins's claims should be dismissed with prejudice for failure

---

[7] "The Court has repeatedly advised the plaintiff that, having brought this action and asserted claims related to his medical treatment and physical health, he has placed his medical records in issue. If he fails to produce notarized medical releases, his claims will be dismissed with prejudice." ECF No. 61 at 1.
[8] "Plaintiff is reminded that discovery closes on July 4, 2014. If plaintiff has failed to produce properly executed medical release forms, the Court will consider defendants' renewed request that the case be dismissed for failure to prosecute." ECF No. 72 at 1.

to prosecute. On July 16, 2014, the Court received a letter from Watkins dated July 14, 2014 (ECF No. 74), which, liberally construed, appeared to be an application to reconsider the Court's June 27, 2014 Order. The letter also stated that Watkins had mailed the Court copies of his executed release forms, though the Court never received such forms. In response, on July 23, 2014, the Court extended discovery until August 29, 2014, and ordered Watkins to immediately provide executed medical releases to the defendants (ECF No. 75). It further ordered the defendants to depose Watkins, and to make a record if Watkins refused to be deposed. The Court again noted the possibility that Watkins's claims may be dismissed, but in light of his *pro se* status, it offered him yet another opportunity to present his claims.[9] This was Watkins's sixth written warning from the Court.

On August 4, 2014, the defendants filed a letter requesting a 30-day extension of discovery and the issuance of an Order to Show Cause in the event that Watkins failed to appear for his deposition or failed to provide fully executed medical releases (ECF No. 78). On August 20, 2014, the Court granted the discovery extension but denied the other requests for relief (ECF No. 79). On September 3, 2014, the Court received Watkin's August 23, 2014 letter indicating that he intended to make himself available for a deposition and asking the defendants to bring him the release forms (ECF No. 82).

---

[9] "The plaintiff has been given numerous opportunities to comply with his discovery obligations and the full assistance of the Court in doing so. He has repeatedly failed to take any action to produce the documents in his control that are essential to his case.

Defendants have submitted numerous applications to the Court to dismiss this action for failure to prosecute pursuant to Federal Rule of Civil Procedure 41(b). In each application, the facts presented weigh strongly in favor of dismissal. The Court, however, is aware that, as an incarcerated *pro se* litigant, the plaintiff may face unique burdens. Moreover, in this circuit, district courts are directed to provide a *pro se* litigant every opportunity to present his claims.

Accordingly, the Court will extend the discovery deadline until August 29, 2014. . . . Defendants are further directed to take plaintiff's deposition and, if necessary, to provide him with medical records release forms to execute at the deposition. If the plaintiff refuses to do so, defendants shall make a record of that refusal on the record. The plaintiff has been advised that he likely cannot prosecute his claims without providing his medical records." ECF No. 75 at 2.

On September 9, 2014, the Court received Watkins's August 29, 2014 letter styled as an "Addendum" for a "Commercial Tort Claim under UCC § 9-102(a)(13) for Fraud" (ECF No. 84).[10] That same day, Passeser attempted to depose Watkins. Watkins executed his medical releases, but he initially refused to be sworn in or to answer questions. Defs. Decl. ¶ 37. The parties called Chambers, and the Court spoke with Watkins at length. The Court warned him that he refused to answer questions at his own peril, and that "[i]f Mr. Watkins does not answer the questions under oath, [his case] will be dismissed. It's very simple." Watkins Dep. 62:7-62:9. Eventually, Watkins agreed to be deposed under the name John Peter Public, id. at 63:25-64:5, 65:7-65:12, but he refused to answer questions halfway through his deposition unless he was first allowed to depose Passeser, id. at 143:2-143:16.

The parties called Chambers again, and the Court clearly apprised Watkins of his responsibilities in prosecuting his case: "Today is the day of your deposition so you need to answer all of the questions that Mr. Passeser has presented to you. We can't stop this deposition and then conduct another deposition. You need to complete your deposition." Id. at 147:14-147:20. "Mr. Public, I'm going to be very clear on the record here, if you are refusing to answer questions, it is at your [peril]. Mr. Passeser has not[ic]ed this deposition, he is entitled to depose you, he's entitled to a full seven hours of questioning." Id. at 148:18-148:24. Watkins said that if the Court would not immediately meet his demands for a variety

---

[10] UCC § 9-102 defines the terms in Article 9 of the UCC. Section 9-102(a)(13) reads: "'Commercial tort claim' means a claim arising in tort with respect to which: (A) the claimant is an organization; or (B) the claimant is an individual and the claim: (i) arose in the course of the claimant's business or profession; and (ii) does not include damages arising out of personal injury to or the death of an individual." Watkins's claims clearly do not fall under this provision. First, a mere definition does not provide a private right of action in tort. UCC § 9-109(d)(12) (UCC Article 9 does not create "an assignment of a claim arising in tort" outside of commercial claims). Despite his conclusory allegations to the contrary, Watkins's claim is in no way commercial. Second, even if the rule did create a right of action in tort, Watkins would not meet the standards set out in the definition, as he is not an organization, his claims did not arise in a business or professional context, and his claims do arise out of personal injury.

of irrelevant documents and an inappropriate deposition, "this deposition is over and I don't worry about the consequences later." Id. at 150:19-150:21. Finally, the Court ordered Watkins to complete his deposition. Watkins repeatedly interrupted the Court to disclaim his willingness to follow its orders:

> COURT: . . . [Y]ou don't have the privilege of telling me when I issue my orders—
>
> WATKINS: Your Honor, your Honor. Are you not a civil servant?
>
> COURT: You are to complete your deposition today—
>
> WATKINS: I am not obligated to listen to your order. I am not obligated. You know what? Goodbye. Hang up, goodbye. I'm not finishing. Goodbye, gentlem[e]n. I'm done for the day. You ready to go?

Id. at 162:14-162:25.

On September 11, 2014, the defense filed a letter advising the Court that it consented to Watkins's apparent desire to amend his complaint to include only claims under the UCC (ECF No. 85). The letter proposed a briefing schedule to dismiss the amended complaint for lack of subject matter jurisdiction and for failure to state a claim, and, regardless of the amendment, proposed a briefing schedule for this motion to dismiss for failure to prosecute.

On September 16, 2014, the Court issued an order summarizing the phone calls it had received during Watkins's deposition and directing Watkins to file a short, plain statement explaining the basis for his claims by September 29, 2014 (ECF No. 86). The Court granted the defense permission to file a motion to dismiss if it seemed appropriate based on Watkins's statement, and also set out a briefing schedule for that potential motion.

On October 6, 2014, the Court received Watkins's September 28, 2014 letter (ECF No. 88), which included Watkins's writ of *habeas corpus*. On October 15, 2014, the Court

ordered that Watkins's latest *habeas* papers be docketed as a new *habeas* case (ECF No. 89).[11]

On October 17, 2014, the defense filed its motion to dismiss (ECF No. 90). On October 23, 2014, Judge Daniels referred the case to me for dispositive motions in addition to general pretrial supervision (ECF No. 93).

On October 21, 2014, the Court received Watkins's October 13, 2014 letter, in which he disclaimed any obligation to answer questions at a deposition and insisted that he had the right to depose Passeser (ECF No. 94).[12]

On November 7, 2014, the Court ordered (ECF No. 97) that Watkins's latest *habeas* letters, as well as all future letters seeking relief from his conviction, be docketed alongside his September 28, 2014 letter at his *habeas* case, Watkins v. Department of Corrections, 14 Civ. 8359. That order also established a new protocol—given Watkins's tendency to write numerous, long letters that frequently mixed together his various cases before me,[13] the Court would address non-emergency matters only on a monthly basis.

On November 10, 2014, the Court received Watkins's November 3, 2014 opposition to this motion to dismiss (ECF No. 98), and another letter, dated November 1, 2014, that made up the rest of his opposition papers (ECF No. 101).

---

[11] Judge Preska dismissed that case, Watkins v. Department of Corrections, 14 Civ. 8359 (LAP), on May 6, 2015.
[12] "I will send a line of questioning to Mr. Passeser to complete and when it is completed, I will then finish his ridicules line of questioning. ie. From what I understand we are ¾ through [the deposition], and since his court reporter has no jurisdiction to swear me in, I felt no obligation in being candid in my answers. I made a motion that the deposition be stricken from the record, and that Mr. Passeser try again; this time demonstrating more etiquette in his line of questioning or answer my line of questioning which will be equally morbid, insensitive and inappropriate." [*sic*] ECF No. 94 at 1.
[13] Watkins has also been the plaintiff in two other cases before me during much of this case: Watkins v. Matarazzo, 13 Civ. 2477 (LGS)(SN), and Watkins v. Ramos, 14 Civ. 2748 (LGS)(SN).

On December 2, 2014, the Court received Watkins's November 21, 2014 letter, which he presented as an "Order to Show Cause and Objection to Report and Recommendation" and "Affidavit" in all three of his cases before me (ECF No. 102). This letter appeared to be an objection to the protocol outlined in the Court's November 7, 2014 Order. On December 5, 2015, the Court received Watkins's December 1, 2014 letter, which in relevant part again opposed this motion (ECF No. 103). Also on December 10, 2015, the Court addressed Watkins's November 2014 letters in an order that (1) denied Watkins's request to depose Passeser; (2) noted that if Watkins did not submit written deposition questions to the defense within the appropriate discovery period, he may be precluded from doing so later;[14] and (3) addressed unrelated discovery issues (ECF No. 104).

On December 22, 2014, the defense filed its reply papers (ECF No. 105).

On December 29, 2014, the Court addressed Watkins's December 1, 2014 letter (ECF No. 106). The Court specifically noted that Watkins had already refused to complete a deposition, and denied his apparent request to schedule a second deposition. The Court also instructed Watkins to bring any allegations of subsequent abuse by prison officials in a new, separate case in the district in which that alleged abuse occurred.

On February 25, 2015, the Court received Watkins's February 18, 2015 letter requesting the status of his three cases before me (ECF No. 109). On March 2, 2015, the Court informed Watkins that this motion was fully briefed and under the Court's consideration (ECF No. 110).

---

[14] The Court had previously granted Watkins leave to serve written questions for deposition of the defendants and waived the court reporter requirement. Fed R. Civ. P. 31. The Court did not, however, grant Watkins leave to depose Passeser.

## DISCUSSION

Watkins has exhibited bad faith and willfully dilatory tactics in his attempt to avoid his discovery duties. Dismissal of his claims with prejudice is warranted under both Federal Rules of Civil Procedure 37 and 41,[15] "especially in view of [his] generally obstructive behavior." Daval Steel Products, a Div. of Francosteel Corp. v. M/V Fakredine, 951 F.2d 1357, 1363 (2d Cir. 1991).

In opposition to the defendants' motion, Watkins claims that (1) his delays in responding to the Court and to the defendants were caused by the prison mail system; and (2) his uncooperative behavior at his deposition was a result of his re-experiencing past trauma caused by the underlying facts in this case. Neither of Watkins's arguments, however, has merit in this context.

## I.    Failure to Prosecute

### A.    Standard of Law

A plaintiff has a general obligation to prosecute his case diligently. See Lyell Theatre Corp. v. Loews Corp., 682 F.2d 37, 43 (2d Cir. 1982). A court may dismiss the action, pursuant to Rule 41(b) of the Federal Rules of Civil Procedure, for failure to prosecute if the plaintiff fails to meet this obligation. In fact, "[a] plaintiff[']s lack of diligence alone is enough for dismissal." West v. City of New York, 130 F.R.D. 522, 526 (S.D.N.Y. 1990) (citation omitted). "The fact that plaintiff is incarcerated does not absolve him of the responsibility to prosecute his lawsuit in a diligent ma[nn]er." Id. (citation and internal quotation marks omitted). A *pro se*

---

[15] While the Court is cognizant of the fact that "Rules 37 and 41 are not interchangeable," Selby v. Arms, 93 Civ. 6481 (DLC), 1996 WL 131820, at *4 (S.D.N.Y. Mar. 25, 1996), Watkins has met both rules' standards for dismissal.

plaintiff, however, "should be granted special leniency regarding procedural matters." LeSane v. Hall's Sec. Analyst, Inc., 239 F.3d 206, 209 (2d Cir. 2001).

Although Rule 41(b) provides that "a defendant may move to dismiss the action or any claim against it" when a plaintiff fails to prosecute the case or to comply with a court order, the court need not wait for a defendant to file such a motion. See Link v. Wabash R.R. Co., 370 U.S. 626, 629 (1962). Moreover, the court "may even, *sua sponte*, and without notice to the parties, dismiss a complaint for lack of prosecution, and such dismissal is largely a matter of the judge's discretion." West, 130 F.R.D. at 524. Indeed, because district courts are "necessarily vested" with the control required "to manage their own affairs so as to achieve the orderly and expeditious disposition of cases," the court may even dismiss an action *with* prejudice when a plaintiff fails to prosecute his case. Link, 370 U.S. at 630-31.

In deciding whether to dismiss an action for failure to prosecute, the court must consider five factors: "'(1) the duration of the plaintiff's failure to comply with the court order, (2) whether plaintiff was on notice that failure to comply would result in dismissal, (3) whether the defendants are likely to be prejudiced by further delay in the proceedings, (4) a balancing of the court's interest in managing its docket with the plaintiff's interest in receiving a fair chance to be heard, and (5) whether the judge has adequately considered a sanction less drastic than dismissal.'" Baptiste v. Sommers, 768 F.3d 212, 216 (2d Cir. 2014) (quoting Lucas v. Miles, 84 F.3d 532, 535 (2d Cir. 1996)). Of these factors, no particular one is dispositive. Id. (citing Nita v. Connecticut Dep't of Envtl. Prot., 16 F.3d 482, 485 (2d Cir. 1994)).

While a district court is not required to address each of these factors in its written decision by a list of "'robotic incantations,'" id. at 217 (quoting United States v. Crosby, 397 F.3d 103, 113 (2d Cir. 2005)), the court at a minimum must provide a reason for the dismissal.

See Grace v. New York, 10 Civ. 3853 (LTS)(GWG), 2010 WL 3489574, at *2 (Sept. 7, 2010), report and recommendation adopted, 2010 WL 4026060 (S.D.N.Y. Oct. 14, 2010).

### B.    Analysis

All five Baptiste factors weigh in favor of dismissal. Though a factor-by-factor analysis is not required for dismissal, the Court will enumerate the reasoning behind each factor because "notions of simple fairness suggest that a *pro se* litigant should receive an explanation before his or her suit is thrown out of court." Lucas, 84 F.3d at 535. As described below, the circumstances of this case are "'sufficiently extreme'" to warrant dismissal under the admittedly high standard set out in Baptiste. 768 F.3d at 217 (quoting LeSane, 239 F.3d at 209).

### 1.    Duration

Watkins has refused to comply with two sets of court orders: (1) orders to execute medical releases; and (2) orders to be deposed and to complete his deposition under oath. Watkins ignored repeated orders to produce the releases and spent 11 months delaying his case from the initial order to produce them on October 7, 2013 to his ultimate production of them at his deposition on September 9, 2014. The Court directed the defendants to take Watkins's deposition in light of Watkins's repeated failure to produce signed medical release forms or to otherwise participate in his case, and to make a record of whether Watkins intended to pursue his case. Watkins did ultimately produce the release forms at his deposition, but this pattern of dilatory tactics informs the Court's analysis of his failure to complete his deposition, which is the basis for this motion. Watkins stopped his deposition halfway through and refused to answer questions until his unreasonable demands were met,

despite two phone calls to Chambers and direct, clear verbal orders to continue answering questions and to complete his deposition.

In opposition to this motion, Watkins has offered to resume his deposition, but his apparent willingness to do so in another case before me, Watkins v. Matarazzo, 13 Civ. 2477 (LGS)(SN), proved false when he refused to be sworn in for a second time. At his April 22, 2015 second deposition in that case, at which Passeser appeared in a supervisory capacity, Watkins refused to allow Passeser or the attorney in Matarazzo to question him unless they signed a fictitious legal form.[16] See Watkins Dep. 3:6-3:10, April 22, 2015, 13 Civ. 2477 ("Watkins Alternate Dep.") ("WATKINS: Also, Your Honor, according to U.S.C. Subdivision 552(a) under the Privacy Act I have given, both of these gentlemen, Mr. Fogarty and Mr. Passeser, this which they need to complete and before they can even ask me any questions pursuant to Law 93579, the Privacy Act of 1974.").[17] Watkins also claimed that he was under no obligation to obey any law within the United States Code unless he was first presented with a fictitious "enactment clause," and that that meant that he had "no obligation to be sworn in." Id. at 9:15; see id. at 9:17-9:20.

"The first factor to be examined breaks down into two parts: (1) whether the failures to prosecute were those of the plaintiff, and (2) whether these failures were of significant duration." U.S. ex rel. Drake v. Norden Sys., Inc., 375 F.3d 248, 255 (2d Cir. 2004). Here, Watkins's failure to complete his deposition was clearly his own. And his statements during his depositions,

---

[16] Watkins's second attempted deposition in Matarazzo in April 2015 was necessitated after he refused to be sworn in or answer questions in the first person during the first scheduled deposition. Watkins later requested a second opportunity, and represented he would comply with the rules, and so the Court directed defendants in that case to attempt a second deposition. See Pl.'s Letter of March 13, 2015, 13 Civ. 2477, ECF No. 138.
[17] Watkins's insistence that government officials must fill out a form before questioning him has no basis in fact or law.

which echo consistently throughout his subsequent letters, show no support for the argument he raises in opposition to this motion, which is that he was merely suffering from the effects of trauma during the deposition because he was reliving the traumatic experience of the underlying incident. These allegations, if true, may well cause trauma, but Watkins had not provided that explanation before, despite his numerous writings to and conversations with the Court.

The duration of his failure has been several months, but coupled with his other delaying tactics in this case, the time has amounted to over a year and demonstrates Watkins's steadfast decision to be contumacious. "Conduct resulting in a relatively short period of delay may still warrant dismissal when it is part of a deliberate pattern of intransigence." Graham v. Sullivan, 1999 U.S. Dist. LEXIS 17172, at *5 (S.D.N.Y. Oct. 26, 1999). Additionally, though Watkins's delay of his deposition itself has been only a few months, his conduct has been consistently obstructionist, and "the delay here has functioned as a complete block to moving this litigation forward, despite the efforts of defendants and the Court to do so." Kent v. Scamardella, 2007 U.S. Dist. LEXIS 78648, at *6 (S.D.N.Y. Oct. 18, 2007).  Accordingly, this factor weighs heavily in favor of dismissal.

### 2.    Notice

In recognition of the plaintiff's *pro se* status, the Court gave Watkins ample notice that his continued refusal to obey Court orders would lead to dismissal of his claims with prejudice. The Court issued six written warnings in total, including conditional language, as in the Court's December 12, 2013 Order (ECF No. 37) warning that the action "*may* be dismissed with prejudice" (emphasis supplied), and more forceful language in the Court's May 7, 2014 Order (ECF No. 61) warning that refusal to comply with a discovery order meant that "his claims *will* be dismissed with prejudice" (emphasis supplied). The Court

also gave Watkins repeated, obvious verbal orders to complete his deposition during the parties' two phone calls to Chambers. See, e.g., Watkins Dep. 62:7-62:9 ("COURT: If Mr. Watkins does not answer the questions under oath, [the case] will be dismissed. It's very simple."); id. at 147:14-147:20 ("Today is the day of your deposition so you need to answer all of the questions that Mr. Passeser has presented to you. We can't stop this deposition and then conduct another deposition. You need to complete your deposition."); id. at 148:18-148:24 ("COURT: I'm going to be very clear on the record here, if you are refusing to answer questions, it is at your [peril]. Mr. Passeser has not[ic]ed this deposition, he is entitled to depose you, he's entitled to a full seven hours of questioning."); id. at 151:2-151:4 ("If you refuse to answer questions, like I said, it's at your [peril]."); id. at 162:19-162:22 (explaining to Watkins, "You are to complete your deposition today—" before being cut off by Watkins, who acknowledged that the Court had given him an order). This was more than sufficient to put Watkins on notice of the risks of his behavior. See Aziz v. Wright, 34 F.3d 587, 589 (8th Cir. 1994) (affirming dismissal under Rule 41(b) where plaintiff "willfully disregarded the court's order allowing defendants to depose him" despite magistrate judge's warning that he would recommend dismissal). Accordingly, Watkins has no valid argument that he lacked notice that his behavior could lead to dismissal, and this factor weighs heavily in favor of dismissal.

### 3. Prejudice

Watkins's conduct in this case has already caused prejudice to the defendants, and, if left unresolved, threatens further, reasonably foreseeable future harm. "Prejudice may be presumed as a matter of law in certain cases, but the issue turns on the degree to which the delay was lengthy and inexcusable." U.S. ex rel. Drake, 375 F.3d at 256. The presumption

of prejudice is valid here, where Watkins's delay is part of a deliberate pattern and comes in the face of clear, repeated Court orders. Though this presumption is rebuttable, id. at 257, Watkins has made no showing to meet that burden. Rather, his explanations rely on fictitious laws and clearly erroneous readings of actual laws, in the face of the Court's clear orders to complete his deposition.

If Watkins continues his pattern of rescheduling and unilaterally halting his deposition, the defendants are unlikely to ever be able to defend against these claims and clear their names and professional reputations given the serious nature of the charges they face:

> [T]hese section 1983 claims are brought against corrections officers in their individual capacities. The individuals stand accused of serious constitutional violations. The pending litigations are matters which properly may be inquired into on a mortgage or car loan application or future employment application. The defendants and the public are entitled to have the cloud over the defendants' names resolved one way or another.

George v. City of New York, Nos. 12 Civ. 6365 (PKC)(JLC), 13 Civ. 3511 (PKC)(JLC), 13 Civ. 3514 (PKC)(JLC), 2013 WL 5943206, at *4 (S.D.N.Y. Nov. 6, 2013). The City of New York and the New York State Department of Corrections and Community Supervision have also been prejudiced by having to send a lawyer to Sing Sing Correctional Facility for Watkins's failed deposition and to transfer Watkins to that facility for his deposition. Significant public resources have been spent while Watkins has refused to prosecute his case.

Accordingly, this factor weighs heavily in favor of dismissal.

### 4.      Balancing the Interests of the Court and the Plaintiff

The court may also find prejudice where the intransigent party's behavior has cluttered the court's docket and outweighed the case's value to the plaintiff. Stated

differently, "[e]ach plaintiff has a right to his day in Court. This right is qualified by the obligation to comply with lawful Court orders. Noncompliance undermines the ability of the Court to manage its docket and dispense justice to all litigants in an expeditious manner." Id. at *4. The procedural history in this case and Watkins's general litigation history make clear that, though Watkins has written frequently to the Court, his numerous missives are not, in and of themselves, sufficient to establish "prosecution" within the meaning of Rule 41(b). Rather, Watkins's repeated obstinacy has prejudiced the Court's ability to manage its docket, as demonstrated by (1) the necessity of the Court's November 7, 2014 Order (ECF No. 97) explaining that it could only handle the large volume of his letters by creating a new protocol to respond on a monthly basis to those that did not describe emergencies, and (2) the 113 docket entries on a case involving relatively simple allegations that never got past the plaintiff's deposition. "The interest of justice is not served by giving plaintiff[] unlimited chances to obey the Court's orders and defendant[s] should not be forced to bear further costs of litigating these actions." Zinnamon v. Outstanding Bus Co., 2009 U.S. Dist. LEXIS 87231, at *15 (E.D.N.Y. Aug. 31, 2009). Accordingly, this factor weighs heavily in favor of dismissal.

### 5. Consideration of Lesser Sanctions

The Court of Appeals for the Second Circuit has advised district courts to consider carefully the potential effectiveness of lesser sanctions before granting dismissal for failure to prosecute. See Martens v. Thomann, 273 F.3d 159, 182 (2d Cir. 2001) (district court's one-sentence analysis of lesser sanctions insufficient to justify dismissal). Such lesser sanctions could include those described in Rule 37(b)(2)(a)(i-vii), which include adverse inferences, prohibiting the introduction of evidence, and contempt of court; and dismissal

without prejudice under Rule 4(m). <u>See</u> <u>Thrall v. Cent. New York Reg'l Transp. Auth.</u>, 399 F. App'x 663, 666 (2d Cir. 2010) (Rule 4(m)); <u>Jackson v. City of New York</u>, 22 F.3d 71, 76 (2d Cir. 1994) (citing <u>Link</u>, 370 U.S. at 629-30) (Rule 37(b) sanctions appropriate under Rule 41(b) via Rule 16(f)). The Court of Appeals has, however, also stated plainly that dismissal is appropriate where "the District Court ha[s] no reason to believe that lesser sanctions would be effective." <u>Peters-Turnbull v. Bd. of Educ. of City of New York</u>, 7 F. App'x 107, 110 (2d Cir. 2001). For instance, <u>Peters-Turnbull</u> upheld dismissal where the plaintiff "had been warned repeatedly and the issues on which discovery had not been produced constituted the essence of the case." <u>Id.</u>

Such is the case here as well; Watkins has given every indication that he will ignore all lesser sanctions. This suit falls squarely among those where the "[p]laintiffs' failure to comply with their discovery obligations as well as the other actions they have taken . . . demonstrate their willful disregard of the Court's orders." <u>Zinnamon</u>, 2009 U.S. Dist. LEXIS 87231, at *15. One need only look at a sampling of Watkins's many letters to the Court for his direct statements that he is not bound by the Court's orders, which he understood, or by federal law. <u>See, e.g.</u>, Pl.'s Letter of November 21, 2014, ECF No. 102, at 2 ("Dear Judge Sarah Netburn, After reading your letter dated 11/7/2014, of which I received 11/21/2014 cannot be taken seriously. . . . [W]hat of your Article VI vows to uphold the [C]onstitution?" [*sic*]); <u>id.</u> at 4 ("For your clerk[']s convenience you cannot tell me what to litigate in cases I am already paying for. That would be unconstitutional. If you are overwhelmed, I would say speak to Judge Chief Preska or Schofield . . . . If any of these newfangled decisions should effect or jeopardize any of my cases, I will be inclined to go to [the] Judicial Misconduct and Disability Board." [*sic*]); Pl.'s Letter of October 13, 2014,

ECF No. 94, at 1 ("[S]ince [Passeser's] court reporter has no jurisdiction to swear me in, I felt no obligation in being candid in my answers." [*sic*]); Pl.'s Letter of September 24, 2014, ECF No. 87, at 1 ("As much as the Courts would like to pretend a business transaction did <u>not</u> take place, the more valid my claim becomes; as it was deceiptful in nature and omitions of material facts of an alleged contract occurred." [*sic*] (emphasis in original)); <u>see also</u> Watkins Dep. 162:21-162:22 ("WATKINS: I am not obligated to listen to your order. I am not obligated."); Watkins Alternate Dep. 9:15-9:20 (claiming he was under "no obligation to be sworn in" without presentation of a nonexistent "enactment clause").

Watkins also has insisted on having his day in court, no matter what the Court or the law might say, and has made vitriolic comments about Passeser and this Court. <u>See, e.g.</u>, Pl.'s Letter of December 1, 2014, ECF No. 103, at 4 ("'I will go to the far reaches of the universe to get those officers that beat me up' I will run you over if get in my way Passesser. I will do my best to have you <u>disbarred</u>." [*sic*] (emphasis in original)); Pl.'s Letter of October 13, 2014, ECF No. 94, at 1 ("I made a motion that . . . Mr. Passesser try again; this time demonstrating more etiquette in his line of questioning or answer my line of questioning which will be equally morbid, insensitive and inappropriate." [*sic*]);[18] Pl.'s Letter of December 9, 2013, ECF No. 40, at 1 ("I Dennis Watkins am the acting agent for the person and I charge a fee of $25,000 dollars in gold and silver coin, and will charge you Judge Sarah Netburn $2,500 dollars for ever[y] order you give to me, if and which I choose to ful[]fill so <u>please</u> stand down this is not your case and you are not invited. I will not be bullied." [*sic*] (emphasis in original)).

---

[18] Passeser has been professional and measured in all appearance with the Court.

Given Watkins's attitude, his history of ignoring the Court's discovery deadlines, and his insistence at his deposition that he was under no obligation to speak truthfully and that the Court could not order him to complete his testimony, there is no reason to believe that Watkins would obey lesser sanctions. He has stated plainly that he will re-file this case as is if it is dismissed, and so dismissal without prejudice would be similarly ineffective. Because his case rests entirely on his deposition testimony and requires his cooperative involvement, his intransigence acts as a complete roadblock to any other resolution but dismissal with prejudice. Accordingly, this factor weighs heavily in favor of dismissal.

## II.     Failure to Obey a Discovery Order

In the alternative, I also recommend that Watkins's case be dismissed for failure to obey a discovery order under Rule 37(b)(2). In refusing to complete his deposition, Watkins disobeyed both the Court's order that the deposition take place and its multiple oral orders that Watkins complete the deposition once it had begun.

### A.     Standard of Law

Under Federal Rule of Civil Procedure 37(b)(2), a court may sanction a party that does not obey a discovery order. These sanctions may be triggered when a party "fails to obey an order to provide or permit discovery," and such sanctions include "dismissing the action or proceeding in whole or in part." Fed. R. Civ. P. 37(b)(2)(A); Fed. R. Civ. P. 37(b)(2)(A)(v). "Dismissal with prejudice for discovery failures is a harsh sanction that is to be used only in extreme situations, and then only after (a) the court finds willfulness, bad faith, or fault on the part of the party refusing discovery, and (b) the court gives notice, especially to a *pro se* litigant, that violation of the court's order will result in a dismissal of the case with prejudice." Simmons v. Abruzzo, 49 F.3d 83, 88 (2d Cir. 1995) (citations

omitted). Nonetheless, dismissal under this rule "is confided to the discretion of the district court." Carvalho v. New York Dep't of Taxation & Fin., 21 F. App'x 77, 79 (2d Cir. 2001). The Court of Appeals has identified factors that largely mirror the standards of Rule 41(b), including willfulness, the consideration of lesser sanctions, the duration of noncompliance and notice to the noncompliant party. Agiwal v. Mid Island Mortgage Corp., 555 F.3d 298, 302-03 (2d Cir. 2009).

Dismissal is also a possible sanction under Rule 37(d), which allows courts to sanction a party who, *inter alia*, fails to appear at their own deposition. That rule is not triggered, however, when a party physically appears for their own deposition, even if they then refuse to testify. Salahuddin v. Harris, 782 F.2d 1127, 1130-31 (2d Cir. 1986).[19]

### B.    Analysis

The same analysis applied above to Rule 41(b) satisfies the Court of Appeals' requirements for dismissal under Rule 37(b). Watkins's bad faith is thoroughly demonstrated by his repeated refusal to obey Court orders, his repeated failure (or refusal) to meet important discovery deadlines, and his bold claims that federal law does not apply to him. Watkins's continued, willful disobedience has been ongoing and of long duration, and

---

[19] Although Salahuddin seems to suggest that the failure to comply with a discovery order or otherwise participate in the discovery process should be addressed under Rule 37 and not Rule 41, see 782 F.2d at 1133-34, subsequent circuit decisions confirm that where a plaintiff fails to engage in the discovery process, dismissal under Rule 41 is appropriate. See Manigaulte v. C.W. Post of Long Island University, 533 F. App'x 4 (2d Cir. 2013) (dismissal under Rules 41 and 37 for failing to submit to deposition); Yadav v. Brookhaven Nat. Laboratory, 487 F. App'x 671 (2d Cir. 2012) (dismissal under Rule 41 for failing to respond to discovery demands); Sawyerr v. Chadiajian, 216 F.3d 1073 (2d Cir. 2000) (dismissal under Rule 41 for failing to produce authorizations for the release of medical records); Rahim v. New York City Transit Authority (NYCT), 159 F.3d 1347 (2d Cir. 1998) (dismissal under Rule 41 for failing to produce documents). To the extent that Salahuddin limits Rule 41 to conduct that interferes with trials, the Court further finds that Watkins's behavior has resulted in both delaying discovery and preventing the case from proceeding to trial. See Paige v. Lacoste, 10 Civ. 3356 (SLT)(RER), 2014 WL 4804866, at *9 n.2 (E.D.N.Y. Sept. 26, 2014) (noting that Salahuddin is inconsistently applied, and analyzing case under Rule 41 "because Plaintiff's inaction has not only stunted discovery, but also proceeding to trial.").

it negates the potential effectiveness of lesser sanctions. And the Court has given Watkins ample notice that he would face dismissal if he continued to obstruct discovery, both in the form of six written warnings and in numerous oral warnings, as well as a written deposition order.

"The plain language of Rule 37(b) requires that a court order be in effect before sanctions are imposed . . . ." Salahuddin, 782 F.2d at 1131. That order may be oral or written. See Penthouse Int'l, Ltd. v. Playboy Enterprises, Inc., 663 F.2d 371, 388 (2d Cir. 1981) ("The fact that [a discovery] order was oral rather than written, and that it was not entered pursuant to a formal written Rule 37(a) motion, does not deprive it of any of its binding force and effect."); see also Daval Steel Products, 951 F.2d at 1363-64 (sanctions for violation of oral order to produce appropriate witness who would answer questions at deposition were "well within [the district court's] authority in prescribing sanctions pursuant to Rule 37(b)(2)"). Thus, violation of the Court's oral orders during the deposition was, alone, sufficient to trigger the imposition of sanctions under Rule 37(b).

"In a case where a deponent physically appears at a deposition but refuses to be sworn and testify, then the proper procedure is first to obtain an order from the court, as authorized by Rule 37(a), directing him to be sworn and to testify." Salahuddin, 782 F.2d at 1131 (internal quotation marks and citation omitted). This is exactly the procedure the defense followed in this case, both when Watkins first refused to be sworn in at his deposition and again when he refused to continue testifying. Both times, the parties called the Court, which first orally ordered Watkins to be sworn in and to answer the defense's questions, and then later ordered Watkins to answer the remainder of the defense's questions in order to complete his deposition. See Watkins Dep. 62:7-62:9; id. at 147:14-147:20; id. at

148:18-148:24; id. at 151:2-151:4; id. at 162:19-162:20. The Court of Appeals has upheld

dismissal under Rule 37(b) in a similar case, where a *pro se*, incarcerated plaintiff refused to

answer questions at his own deposition. As the district court in that case correctly pointed

out:

> Courts have a special obligation to *pro se* plaintiffs prosecuting civil
> rights cases from prison. The disabilities under which prisoners must
> work have been frequently noted by the Circuit . . . . However
> special solicitude for the difficulties that a *pro se* plaintiff must face
> does not extend to the willful, obstinate refusal to play by the basic
> rules of the system upon whose very power the plaintiff is calling to
> vindicate his rights.

McDonald v. Head Criminal Court Supervisor Officer, 117 F.R.D. 55, 58 (S.D.N.Y. 1987) aff'd,

850 F.2d 121 (2d Cir. 1988). In affirming the district court's dismissal of the complaint, the

Court of Appeals explained that, though *pro se* litigants are given special solicitude, "all

litigants, including *pro ses*, have an obligation to comply with court orders. When they flout that

obligation they, like all litigants, must suffer the consequences of their actions." McDonald, 850

F.2d at 124. See also Carvalho, 21 F. App'x at 79 (acknowledging failure to obey "the court's

instruction to answer deposition questions" was a violation of a court order warranting dismissal

under Rule 37).

## CONCLUSION

For the reasons discussed above, the defendants' motion to dismiss under Rule 41(b)

should be GRANTED with prejudice as to all counts of the complaint, and, in the alternative, the

plaintiff's complaint should also be dismissed with prejudice under Rule 37(b) for failure to

comply with the Court's discovery orders.

**SO ORDERED.**

SARAH NETBURN
United States Magistrate Judge

DATED:   New York, New York
June 17, 2015

\*                    \*                    \*

## NOTICE OF PROCEDURE FOR FILING OBJECTIONS
## TO THIS REPORT AND RECOMMENDATION

The parties shall have fourteen days from the service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. See also Fed. R. Civ. P. 6(a), (d) (adding three additional days when service is made under Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F)). A party may respond to another party's objections within fourteen days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable George B. Daniels at the United States Courthouse, 500 Pearl Street, New York, New York 10007, and to any opposing parties. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b). Any requests for an extension of time for filing objections must be addressed to Judge Daniels. The failure to file these timely objections will result in a waiver of those objections for purposes of appeal. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b); Thomas v. Arn, 474 U.S. 140 (1985).


cc:      Dennis Watkins (*By Chambers*)
         12-A-3635
         Southport Correctional Facility
         236 Bob Masia Drive
         P.O. Box 2000
         Pine City, NY 14871-2000